Moore, J.
The plaintiffs are the children of Almon E. Hadsell by his first wife Aurilla Hadsell. The defendant Theresa S. Had-sell is the second wife and now widow of Almon E. Hadsell. That on or about Agust 14, 1881, Almon E. Hadsell, was buried in the Ward cemetery or burial ground. That Aurilla Hadsell was buried in the same cemetery sometime prior to 1870. On May 9, 1870, said Almon E. and the defendant Theresa were married, and have since resided in Bath township, Allen county, near the above named cemetery, at which place said Theresa still resides. Almon E. left surviving him six children by his first wife, and five by his second. The latter reside with the mother in the homestead of the former; two reside in Bath township, and the others in different parts of the county away from Allen county, except one daughter, who yesides at Lima, Ohio. The cemetery in which Almon E. Hadsell is burried appears to be indifferently managed, and by a rule or custom a person burying in it has control of the “row” as it is termed, for the burial of relatives or others whose burial in such row is desired. The only right, however, appears to be that of possession. The Hadsell family had one of these “ rows”, and being quite numerous, were buried in it regardless of lineal or collateral descent, until at the time of the decease of Almon there was hardly room for his grave by the side of his first wife.
Some time before the decease of Almon, and partly through his influence, an addition was attached to the cemetery afford *197 ing ample room for interment, and more appropriately adapted to burial purposes.
At different times before his decease Almon had expressed a desire to be buried by his first wife, and he had also expressed a desire to be buried in the new portion of the cemetery. These desires would be inconsistent unless the remains of the first wife were removed to the new portion of the cemetery.
At the time of the burial of Almon, his widow was not consulted, nor did she have any voice in selecting the place of burial. The plaintiff Milo D. Hatsell, after the death of his father, and on the evening preceding the funeral, being unable to at once ascertain who had control of the addition to the burying ground, had the grave dug in the old part. There was barely room for the grave beside the former wife, and so close was it to the grave on each side, that by placing the hands upon the side of the grave the ground would shake or tremble, and the path between this and the adjacent “ row” was but eighteen inches. So far as is disclosed, Almon E. and Theresa Hadsell lived happily together, she nursing and earing for him until the time of his decease. Milo D. Hadsell became the administrator of the estate of his father, and it does not appear-that either as such administrator, or from filial affection or regard for the memory of the deceased, he took any care of the grave. The evidence shows that because of the crowded condition of the Hadsell “ row” in the graveyard, the usual and oi’dinary care bestowed upon graves to beautify and adorn them could not be had.
The estate of Almon E. Hadsell amounted to from $45,000 to $50,000, of which $9,000 or 10,000 was personalty, and while such ample means were at the command of the administrator, and the statute of Ohio gave the right to do so, no effort was made to procure a monument to the memory of Almon E. Hadsell.
■ Milo says that he expected after the estate would be settled the heirs would “ chip in ” and procure a tombstone. Milo, *198 administrator, had the right to make them all “ chip in ” equally. If left to themselves, some might fail to have the “ chips, ” and Milo himself might fail to pay.
In August, 1882, a year from the decease of her husband, Mrs. Hadsell pirrchased a monument, and although she endeavored to have it paid for from the estate of her husband by order of the probate court, the administrator successfully resisted it, and she herself bore the full expense of $800.
This monument was in keeping with the standing of the estate of the .deceased. It was just and reasonable.
When this monument was taken to the cemetery, it was ascertained that in the new portion of the cemetery a much more appropriate place could be procured for the remains of Alma E. Hadsell and his first wife, with room adjoining for all the members of his family; that the spot where the bodies now lie is low, grown over with brambles and weeds, and with insufficient room to erect the monument provided, or any suitably large monument.
Mrs. Hadsell ascertaining this condition of affairs, consulted with James Hadsell, one of her step-sons, and also had James notify his brother Milo,, requesting him to meet Mrs. Hadsell at the cemetery and consult with her on the matter. Milo was busy in the hay-field and, as we find, sent word to Mrs. Hadsell to place the monument where she desired — to exercise her judgment. James gave consent to the monument being placed in the new part, and assisted in selecting the location.
Mrs. Hadsell then procured and was about to have the remains of Almon E. and his first wife removed to the place selected, when an injunction issued on behalf of the plaintiffs preventing such removal. The widow and children by the second wife desire the removal of the bodies, or at least that of the husband and father; such of the children of the first wife, as have spoken, object to the removal of either body.
The question to be determined is, whether the defendants shall be enjoined from exhuming the bodies of Almon E. Hadsell and his first wife, or either of them; or on the contra *199 ry, shall the defendant widow have the right to re-locate the grave or graves at such place, as she has selected, and erect a suitable family monument ?
The case is not such as has been usually dealt with by courts of equity, where it was sought to exhume the body and remove it to another cemetery, or to some distant part of the country. Indeed, cases of this character are quite rare — and in this state, at least, there is but little, if any, authority to direct or control the court in determining the questions involved.
A dead body is not property. There are no next of kin,to inherit it. It cannot be inherited, and hence the holding made in some adjudicated cases : “That the bodies of the dead belong to the surviving relatives in the order of inheritance as other property, and that they have the right to the custody and burial of the same,” isjnot supported by reason, statute or custom.
That when a person dies he is to be accorded decent burial, is recognized by society. The expense of such burial is to be paid from his estate ; if a pauper, by the public.
If the wife die, the husband is charged with the expenses attendant upon her funeral. Still it is said that the next of kin shall direct the disposition to be made of the body. That they shall have the right to the control, custody and burial of the body, and may select the place of burial. If such rule is to be gathered from the common law, church and parish customs, it is time some innovation be made.
Why should the child or chidren have preference over the husband or wife in directing the interment of the one or the other ? Where, as in the case at bar, the husband and wife have fulfilled the full measure of the marital obligations of mutual respect, fidelity, support and care, what is there that can be offered as a reason why the wife should not have the preference ? The children form new associations; they in turn form marital relations; their affections go out to others; not so with the aged widow. Her mind recalls the cherished *200 memories of the past; her fondest affections are buried in the tomb of her husband. The grave is cared for because of these recollections. The monument is erected to perpetuate the memory of the deceased.
In the case under consideration, if we are to conclude from what we have observed, it would not be Milo or James that would visit the grave of Almon E. Hadsell; no monument would they erect, no flowers would they strew upon the tomb. The monument to be erected is furnished by Mrs. Hadsell. The care to be bestowed upon the grave will be her care, and the flowers will be strewn.by her hand.
We are appealed to in strong language, not to permit a desecration of the grave, and the language of Judge Scribner is quoted to us : “ That a proper respect for the dead, a regard for the tender sensibilities of the living, and the due preservation of the public health, require that a corpse should not be disinterred, or transported from place to place, except under extreme circumstances and exigency.” Smiley et al. v. Bartlett et al., 6 C. C. R. 234.
The particular place in which Almon E. Hadsell is buried is not a suitable place, nor can his grave be well cared for. The place to which it is proposed to move his body is appropriate; a suitable monument can be erected, and his grave properly cared for, so that the removal will show no disrespect for the dead, but otherwise. For the same reason, the tender sensibilities of the living will not be disregarded. The public health will not be endangered by the removal of a dead body enclosed in a coffin from one grave to another in the same cemetery, and especially so, as in this case, when the death was not caused by any infectuous disease. There is no transportation from place to place.
The right of the widow to administer on her husband’s estate is equal to that of the next of kin, and she is first named in the statute. Her support for one year, with right of the mansion-house for that period of time, is superior to that »of any distribution of the estate. In the distribution of person *201 alty her right is equal to that of the children, and in the realty her right cannot be defeated • either by any act of the husband or that of the heirs at law. In no manner in our statute is the right of the next of kin recognized as being superior to that of the widow. Why then should the next of kin have preference in determining the burial place of the deceased husband? If the right exists solely upon the ground of precedents, an established arbitrary rule, it should 'not prevail where the facts appear as in the case at bar.
Admitting, however, that the rights of the plaintiffs, the childx’en of the first wife, and that of the widow are equal. It would then become a question of appealing to the judgment and discretion of the court. ' If so, then the better the location, more suitable site for an appropriate monument, as much better place for the care of the grave, should contx’ol. The mere removal of the bodies cuts but little figure in the case, and the desire of the deceased husband, to be buried by the side of his first wife, is no better proved than that he also preferred that his grave be in the new portion of the cemetery. By the removal of both bodies, both these requests would be carried out..
Another reason exists in the case why the injunction should be dissolved. Looking to the facts as we have found them, James Hadsell assented to what Mrs. Hadsell contemplated doing, and assisted in determining the location of the monixment, where it is erected in the new part of the cemetex-y. Milo was'requested to be present for consultation, and gave a trivial reason for his refusal, but in effect said that the widow could exercise her pleasure in the matter. Prior to that time he had seen the monument, expressed his satisfaction, and x-eferred the agent of the Granite Company, who' had it for sale, to Mr. Hadsell for her approval. She then approved it, aixd purchased it at a sum, $200.00, less than the price named to Milo. Milo and James, especially Milo, are the active parties in pi’osecuting this suit, and under the facts as they appear, should be estopped from interfering with the defendants in removing the body of Almon E. Hadsell.
James L. Price, attorney for plaintiffs.
Robb & Leete and Walter Parmenter, attorneys for defendants.
It does not appear that Mrs. Hadsell had any intention to remove the body of the first wife, if objection was made.
With these views of the case, the decree of the court will be for the defendants, at the costs of the plaintiffs.